UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

_____

C.H. Robinson Worldwide, Inc.,

      Plaintiff,

v.

Traffic Tech, Inc., James Antobenedetto,
Spencer Buckley, Iman Dadkhah, Wade
Dossey, Miles Maassen, and Brian Peacock,

      Defendants.

Case No. 19-cv-902 (MJD/DTS)

**REPORT AND RECOMMENDATION**

_____

Joel O'Malley, Nilan Johnson Lewis PA, 120 South Sixth Street, Suite 400, Minneapolis, MN 55402, for Plaintiff

Pamela Abbate-Dattilo, Fredrikson & Byron, PA, 200 South Sixth Street, Suite 4000, Minneapolis, MN 55402, for Defendants

_____

Plaintiff C.H. Robinson Worldwide, Inc. sued six individuals – four former employees of C.H. Robinson and two former employees of its subsidiary Freightquote.com, Inc. – and their current employer Traffic Tech, Inc., for breach of contract and confidentiality obligations relating to post-employment restrictive covenants and for tortious interference with contractional relationship and prospective economic advantage. *See* Complaint, Docket No. 1-1.[1] Defendants Iman Dadkhah and Miles Maassen moved to dismiss all claims against them, asserting that C.H. Robinson lacks standing, and all Defendants moved to dismiss Counts IV, V, and VI alleging failure to

_____

[1] The Complaint alleges Count I: Breach of Contract (Against Ex-Employee Defendants); Count II: Tortious Interference with Contractual Relationship (Against All Defendants); Count III: Tortious Interference with Prospective Economic Advantage (Against All Defendants); Count IV: Breach of Duty of Confidentiality (Against All Defendants); Count V: Inducing, Aiding and Abetting Breaches (Against All Defendants); and Count VI: Conspiracy (Against All Defendants).

state a claim. Docket No. 24. For the reasons stated below, the Court recommends that Dadkhah and Maassen's motion be granted but that C.H. Robinson be allowed reasonable time to join Freightquote.com, Inc.; and if C.H. Robinson does not do so, that Dadkhah and Maassen be dismissed from the lawsuit; and that all Defendants' motion to dismiss Counts IV, V, and VI be granted without prejudice and that C.H. Robinson be allowed to file an amended complaint to re-plead these counts.

**FINDINGS OF FACT**

C.H. Robinson acquired Freightquote.com, Inc. in December 2014. Compl. ¶ 5, Docket No. 1-1. Freightquote.com, Inc. is a subsidiary of C.H. Robinson.[2] Freightquote.com, Inc. still exists as a functioning company and separate legal entity, specifically, a Delaware corporation with its principal place of business in Missouri. *See* 2019 Annual Registration Report for Freightquote.com, Inc. and other information on file with the Missouri Secretary of State.[3]

Over two years after the acquisition, Freightquote.com, Inc. hired Dadkhah and Maassen as sales representatives in Missouri. Compl. ¶¶ 8, 10; Tupa Depo. Tr. 8-9, 14-15, 39.[4] Dadkhah began his employment on March 6, 2017, and Maassen began on November 6, 2017. Compl. ¶¶ 8, 10; Tupa Depo. Tr. 23-24, 36-37. In its opposition brief

---

[2] *See* C.H. Robinson's Form 10-K report filed with the U.S. Securities and Exchange Commission for the fiscal year ending December 31, 2018 which lists Freightquote.com, Inc. as a subsidiary incorporated in Delaware.

[3] The Secretary of State website says Freightquote.com, Inc. is a company in good standing and identifies it as a Delaware corporation with its principal office in Missouri. Found at https://bsd.sos.mo.gov/BusinessEntity/BusinessEntityDetail (last visited Mar. 23, 2020). C.H. Robinson does not dispute that Freightquote.com was and is a functioning company. *See generally* opposition brief, Docket No. 32; *see also* Tupa Depo. Tr. 7-8, 31-32.

[4] A transcript of the August 7, 2019 Rule 30(b)(6) deposition of Trajan Tupa is in the record as Exhibit C to the Pavelko Declaration, Docket No. 27-3.

[Docket No. 32] and during oral argument C.H. Robinson acknowledged they were employees of Freightquote.com, not C.H. Robinson, although the Complaint makes conflicting statements on this point. *Compare* Compl. Intro., ¶¶ 1, 8, 10, 66, 69, 92, 95 *with* ¶¶ 68, 94.[5]

On their first day of employment, Dadkhah and Maassen each signed two agreements with Freightquote.com: a Non-Solicitation/Non-Compete and Confidentiality Agreement and Assignment of Inventions (Non-Solicitation Agreement) and a Mutual Agreement to Arbitrate Claims (Arbitration Agreement). Dadkhah signed his agreements on March 6, 2017. Compl. Ex. 3 (Non-Solicitation Agreement), Docket No. 1-1 at 74-79[6]; Pavelko Decl. Ex. B (Arbitration Agreement), Docket No. 27-2 at 2-7. Maassen signed his agreements on November 6, 2017. Compl. Ex. 5 (Non-Solicitation Agreement), Docket No. 1-1 at 87-92; Pavelko Decl. Ex. B (Arbitration Agreement), Docket No. 27-2 at 8-13.

On December 29, 2017 Dadkhah and Maassen each signed a 2018 Incentive Bonus Agreement – Commissions (Bonus Agreement). Compl. Ex. 20 (Dadkhah's agreement), Docket No. 1-1 at 144-46; Compl. Ex. 28 (Maassen's agreement), Docket No. 1-1 at 165-67. The identity of the entity with whom they signed this agreement is one of the issues in dispute in this motion.

---

[5] The four other individual Defendants (Antobenedetto, Buckley, Dossey, and Peacock) were employees of C.H. Robinson in California. *See* Answer ¶¶ 6, 7, 9, 11, Docket No. 30.
[6] These page numbers refer to the pagination found in the ECF header, not the page numbers at the bottom of the pages.

Freightquote.com terminated their employment on November 5, 2018. Compl. ¶¶ 8, 10; Tupa Depo. Tr. 39-40. Dadkhah and Maassen now work for Defendant Traffic Tech, Inc. Compl. ¶¶ 8, 10.

## I.    Non-Solicitation Agreement

The Non-Solicitation Agreement is between the "Employee" and "Freightquote.com, by and on behalf of itself and its successor companies, affiliated companies, and assigns (hereinafter referred to collectively as 'Company')." Compl. Exs. 3, 5, Docket No. 1-1 at 75, 88. It is signed by the Employee and the Executive Director of Human Resources on behalf of Freightquote.com. *Id.* at 79 (Dadkhah), 92 (Maassen).

The Non-Solicitation Agreement contains restrictive covenants regarding non-solicitation of employees and customers, non-competition, and confidentiality obligations, as well as an assignment of inventions provision. *Id.* at 75-78, 88-91. The agreement states that all disputes relating to the Employee's employment shall be governed by Missouri law and shall be venued in Missouri state or federal courts, and that the Employee consents to personal jurisdiction in those courts. *Id.* at 78-79, 91-92.

The Non-Solicitation Agreement provides that the Company may seek legal and equitable relief if the Employee violates the non-solicitation, non-competition, or confidentiality restrictions in paragraphs 1 through 3, and it includes a unilateral attorney's fees and costs provision in favor of the Company should it prevail in any action against the Employee. This provision states:

> 7.(a) <u>Legal and Equitable Relief</u>. . . . Employee further specifically acknowledges and agrees any breach of paragraphs 1-3 will cause Company substantial and irrevocable damage and, therefore, in addition to such other remedies that may be available, including the recovery of

4

damages from Employee, Company shall have the right to injunctive relief to restrain or enjoin any actual or threatened breach of the provisions of paragraphs 1 through 3. Employee further specifically acknowledges and agrees that, if Company retains counsel to remedy a breach or threatened breach of this Agreement, and Company prevails in any action or litigation, then Company shall be entitled to recover its costs and fees incurred, including its attorney's fees, expert witness fees, and out-of-pocket costs, in addition to any other relief it may be granted.

*Id.* at 78, 91.

## II.    Arbitration Agreement

The Arbitration Agreement is "between Freightquote.com, Inc. ('the Company') and me [the employee] during or following my employment with the Company." Docket No. 27-2. It is signed by the Employee and the Executive Director of Human Resources as the "Authorized Company Representative" of "Freightquote.com, Inc." *Id.* at 7, 13. It provides for binding arbitration of disputes[7] between the parties and describes permissible written discovery, depositions, subpoenas, witnesses, experts, and arbitration procedures. *Id.* at 2-5, 8-11. The agreement also sets forth how and when arbitration fees and costs shall be shared between the parties as well as circumstances under which an arbitrator may award attorney's fees or costs to either party as a prevailing party. *Id.* at 5, 11.

The Arbitration Agreement states that either party may bring claims for temporary injunctive relief to a court and that the party that does so must file for arbitration within five business days after any court order regarding such relief. It provides:

---

[7] Certain categories of claims not at issue here are excluded from the arbitration agreement, including workers' compensation and unemployment compensation claims. Docket No. 27-2 at 2, 8.

Claims Not Covered by the Agreement
* * *

The Company and I agree that any claims by the Company or by me for temporary restraining orders and/or, preliminary injunctions ("temporary equitable relief") relating to or arising out of disputes involving non-competition, non-solicitation or breach of confidentiality provisions or policies may be brought in a court of competent jurisdiction, subject to any agreement of the parties as to forum. The Company and I agree that, within five (5) business days of any court order regarding temporary equitable relief, the party who initiated such claim shall file an arbitration proceeding under this Agreement. The court order regarding temporary equitable relief shall remain binding upon the parties until the Arbitrator issues a final award.

*Id.* at 2-3, 8-9.

The agreement represents the "complete agreement of the parties on the subject of arbitration of disputes" and "supersedes any prior or contemporaneous oral or written understandings on the subject." *Id.* at 6, 12. It also provides that it "can only be revoked or modified by a writing signed by both the Company's Chief Executive Officer and me which specifically states the parties' mutual agreement to revoke or modify this Agreement." *Id.*

### III.    Bonus Agreement

On December 29, 2017 Dadkhah and Maassen each signed the Bonus Agreement. Compl. Exs. 20, 28, Docket No. 1-1 at 146, 167. The contracting parties are identified as the "Employee" and "C.H. ROBINSON WORLDWIDE, INC., or one of its subsidiary or affiliated companies ('Company')." *Id.* at 145, 166. The agreement is signed by the "Employee" and a "Manager," with no further identification of the

manager's name or title. *Id.* at 146, 167.[8] The signature is illegible, and there is nothing in the record that establishes who signed the agreement.

The Bonus Agreement states an effective date of January 1, 2018. *Id.* at 145-46, 166-67. It provides that, in consideration for the Employee's "continued employment" and his "eligibility for a bonus incentive or commission," the Employee agrees to provisions regarding dispute resolution and Minnesota choice of law and venue. *Id.* The dispute resolution provisions in paragraph 6 require mediation and, if mediation is unsuccessful, binding arbitration of "all Claims[9] the Company might bring against [the Employee] and all Claims [the Employee] might bring against the Company and/or any of its officers, directors, or employees." *Id.* at 145, 166. Paragraph 6 also describes the arbitration rules and procedures as well as permissible discovery, depositions, and dispositive motions which are to be decided under the standard of Rule 56 of the Federal Rules of Civil Procedure. *Id.*

The Bonus Agreement states that the dispute resolution provision does not apply to "any claims by the Company that include a request for injunctive or equitable relief":

6. Dispute Resolution

* * *

. . . This Dispute Resolution Agreement shall not apply to . . . any claims by the Company that include a request for injunctive or equitable relief, including, without limitation, claims related to its enforcement of any restrictive covenants, non-competition obligations, non-solicitation obligations and/or confidential information provisions contained in any Company policy and/or employment agreement(s) entered into between

---

[8] Rule 30(b)(6) deposition witness Tupa testified he did not know who gave the Bonus Agreement to Maassen and Dadkhah to sign. Tupa Depo. Tr. 63-64.

[9] Like the Arbitration Agreement, the Bonus Agreement excludes certain categories of claims not at issue here (such as workers' compensation and unemployment insurance) from mandatory mediation and arbitration. *See* Docket No. 1-1 at 145-46, 166-67.

[the Employee] and the Company and/or any claims to protect the Company's trade secrets, confidential or proprietary information, trademarks, copyrights, patents, or other intellectual property.

This dispute resolution provision shall continue in full force and effect during [the Employee's] entire employment with the Company and after [the Employee's] employment has terminated, regardless of the reason for such termination and whether termination was voluntary or involuntary. This dispute resolution provision shall be binding upon the heirs, successors, and assigns of [the Employee] and the Company, and any person or entity asserting Claims or seeking relief of any kind on behalf of [the Employee] or the Company shall be bound by this Agreement to the fullest extent permitted by law.

*Id.* at 146, 167.

The choice of law and venue provision states:

7. Governing Law and Venue Selection

This Agreement is made under and shall be governed by and construed in accordance with the laws of the State of Minnesota without regard to the conflicts of law principles. Any dispute or claim between [the Employee] and the Company not subject to the requirements contained in Paragraph 6 shall be adjudicated or arbitrated in a state or federal court in Hennepin County, Minnesota, and both [the Employee] and the Company consent to jurisdiction in such court, waive any objection to such venue, whether on the basis of inconvenience or otherwise, and agree not to pursue any claim or suit in any other jurisdiction.

*Id.*

The Bonus Agreement states that the Employee becomes eligible for the 2018 bonus/commission plan once he signs the agreement, but no bonus or commission is earned unless other requirements are satisfied. For example, the agreement states that the Employee must be employed on the last calendar day of the month in order to earn commissions; must "satisfactorily perform all of the duties of [his] position"; and must comply "with all of the terms and conditions contained in any agreement(s) previously executed by [him] with the Company, the Company's Code of Conduct, and all other

8

applicable rules, policies, laws, and/or regulations related to [his] employment." *Id.* at 145, 166 (¶¶ 1, 3).

In the last paragraph of the agreement, the Employee reiterates his commitment to comply with agreements previously signed by him and the Company as a precondition to earning the bonus or commissions:

> I understand and acknowledge that this Agreement and the benefits made available to me under this Agreement is part of the compensation and consideration available to me in return for the dispute resolution provision it contains and also the other various agreements I previously have entered into with the Company, which agreements may include, but are not limited to, Management-Employee Agreement, Non Solicitation/Non Competition and Confidentiality and Assignment of Inventions Agreement and Arbitration Agreement. I reaffirm and agree anew to abide by all my prior agreements with the Company as a necessary condition of receiving the benefits under this Agreement.

*Id.* at 146, 167.

## IV.    Procedural Background

C.H. Robinson filed a 57-page Complaint alleging six causes of action against the seven Defendants in Hennepin County District Court. Docket No. 1-1. Attached to the Complaint are 34 exhibits totaling over 130 pages, including Dadkhah's and Maassen's Non-Solicitation Agreements and Bonus Agreements but not their Arbitration Agreements. *Id.*

On April 1, 2019 Defendants removed the action to federal court alleging diversity of citizenship as the basis for federal court jurisdiction. Notice of Removal, Docket No. 1. They allege Dadkhah is a citizen of Kansas and Maassen is a citizen of Missouri. *Id.* ¶¶ 12, 14. That same day Defendants filed a motion to dismiss for lack of personal jurisdiction over certain Defendants, including Dadkhah and Maassen, under

Rule 12(b)(2) and for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Docket Nos. 3, 6.[10]

In May 2019, before C.H. Robinson responded to the dismissal motion, the parties entered into a Stipulation to Stay Defendants' Motion to Dismiss and Engage in Limited Discovery and Mediation. Pavelko Decl. Ex. A (Stipulation), Docket No. 27-1. The parties did not file the Stipulation with the Court until November 27, 2019 when it was submitted as an exhibit in support of Defendants' Partial Motion to Dismiss. *See id.* The Stipulation provides for a 3-month discovery period, with limited written discovery and depositions, followed by private mediation. *Id.* ¶¶ 2-3.[11]

On June 6, 2019 C.H. Robinson produced the two Arbitration Agreements signed by Dadkhah and Maassen. Second Abbate-Dattilo Decl. ¶ 3, Docket No. 46. On August 7, 2019 a Rule 30(b)(6) deposition took place regarding Dadkhah and Maassen. Pavelko Decl. Ex. C (transcript), Docket No. 27-3.

Mediation was unsuccessful, and on November 27, 2019 Defendants withdrew their previous dismissal motion[12] and filed this Partial Motion to Dismiss. Docket No. 24. In the present motion, Dadkhah and Maassen move to dismiss all claims against them, asserting that (1) C.H. Robinson is not the real party in interest under Rule 17(a) of the

---

[10] Defendants assert that a contractual Minnesota choice of law provision is unenforceable, California law applies, and the non-solicitation provisions are unenforceable under California law.

[11] The Stipulation also states that Missouri law applies to the claims against Dadkhah and Maassen [Stipulation ¶ 4]; C.H. Robinson agrees to dismiss with prejudice its purported claims against Dadkhah and Maassen relating to the contractual non-compete provisions [*id.*]; and Dadkhah and Maassen waive their personal jurisdiction defenses and agree to litigate in Minnesota [*id.* ¶ 5]. However, the parties' arguments with respect to the scope or effect of the Stipulation had no bearing on the Court's recommended disposition of this case.

[12] Their withdrawal of the initial motion is stated at page 6 of their brief in support of the later partial dismissal motion. *See* Docket No. 26.

Federal Rules of Civil Procedure and lacks standing to bring the asserted claims against them, and (2) the real party in interest, Freightquote.com, must arbitrate its dispute with them. *Id.* In addition, all Defendants move to dismiss three claims – Counts IV (breach of duty of confidentiality, Compl. ¶¶ 168-77), V (inducing, aiding, and abetting the breaches, ¶¶ 178-82), and VI (conspiracy, ¶¶ 183-88) – against them for failure to state a claim under Rule 12(b)(6). *Id.* Defendants assert that, if their motion is granted in its entirety, the "only claims that should remain are breach of contract, tortious interference with contract, and tortious interference with prospective economic advantage against the California-based employees and Traffic Tech." Defs. Br. 2, Docket No. 26.

On December 6, 2019 all Defendants except Dadkhah and Maassen filed an Answer to the Complaint. Docket No. 30.

On December 18, 2019 C.H. Robinson filed its opposition to the partial dismissal motion [Docket No. 32], to which Defendants filed a Reply on January 2, 2020 [Docket No. 34[13]].

Less than two hours before the hearing on January 9, 2020, C.H. Robinson filed a motion for leave to file a Sur-Reply, contending it was necessary because Defendants had raised "additional factual and legal arguments" in their January 2, 2020 Reply. Docket Nos. 37 (Motion), 38 (Memorandum in Support of Motion). The Court verbally granted C.H. Robinson's motion from the bench and permitted Defendants to file a Sur-Sur-Reply. *See* Hearing Minutes, Docket No. 42. C.H. Robinson filed its Sur-Reply following the hearing [Docket No. 41], and Defendants filed a Sur-Sur-Reply on January 16, 2010 [Docket No. 45].

---

[13] Defendants' Reply is filed as both Docket Nos. 34 and 35. It appears the only difference is that Docket No. 35 includes the word count compliance certificate.

## CONCLUSIONS OF LAW

**I.    Motion to Dismiss All Claims Against Dadkhah and Maassen**

Dadkhah and Maassen seek dismissal of all claims against them on the ground that C.H. Robinson is not the real party in interest under Rule 17(a) of the Federal Rules of Civil Procedure and lacks standing to bring the asserted claims against them. Defs. Br. 1-4, 6-8, Docket No. 26. They contend the Complaint states "no indication" that C.H. Robinson has any standing to sue them; that they were employees of Freightquote.com and any duties owed were owed to Freightquote.com, not C.H. Robinson; and the three agreements C.H. Robinson seeks to enforce in this lawsuit were agreements between Dadkhah/Maassen and Freightoquote.com. *Id.* Moreover, they contend the real party in interest, Freightquote.com, must arbitrate its dispute with them pursuant to the Arbitration Agreement. *Id.* at 2, 8. For this reason, they assert that joinder of Freightquote.com as a plaintiff in this action would be futile. *Id.* at 8. They also argue that the Arbitration Agreement controls, rather than the subsequent Bonus Agreement, because the Arbitration Agreement was not revoked or modified by the Bonus Agreement. *Id.* at 9-10. Finally, the addition of Freightquote.com as a party would destroy federal diversity jurisdiction over this case because Freightquote.com and Maassen are both citizens of Missouri. *See id.* at 11 n.4.

In its opposition, C.H. Robinson asserts that it has standing in this lawsuit because it is a party to the Bonus Agreement, which "acts as an independent restrictive covenant agreement under which C.H. Robinson (and not Freightquote) may sue Dadkhah and Maassen." Pl. Br. 3-4, Docket No. 32. It further states that, even if it lacks standing, immediate dismissal is not mandated; rather, Rule 17(a) requires "reasonable

time" for Freightquote.com to join the case. *Id.* at 5. C.H. Robinson asserts it "will quickly seek leave to add Freightquote as a plaintiff in this action, if necessary." *Id.* at 6.

C.H. Robinson rejects Defendants' argument that joinder of Freightquote.com would be "futile" because arbitration of the dispute is required by the Arbitration Agreement; rather, it contends the Bonus Agreement "modifies the Arbitration Agreement and includes a more expansive exemption from arbitration for restrictive covenant claims." *Id.* at 7. Thus, it argues, the Bonus Agreement's dispute resolution provisions control, and "the claims against Dadkhah and Maassen may proceed to resolution in this Court." *Id.* at 8-9. C.H. Robinson also contends that Dadkhah and Maassen agreed to litigate in Minnesota by signing the Bonus Agreement, which has a Minnesota forum selection clause, and by the May 2019 Stipulation which states "Dadkhah and Maassen waive their personal jurisdiction defenses and will litigate the case in Minnesota." *Id.* at 10, 12 (quoting Stipulation ¶ 5).

Generally, one who is not a party to a contract has no rights under the contract. *Hickman v. SAFECO Ins. Co. of America,* 695 N.W.2d 365, 369 (Minn. 2005). The Court applies Minnesota contract law because the Bonus Agreement – the contract C.H. Robinson relies on as the gateway to enforcing restrictive covenant obligations against Maassen and Dadkhah – is governed by Minnesota law. Compl. Exs. 20, 28 ¶ 7. Absent ambiguity, the interpretation of a contract is a question of law for the Court. *Quade v. Secura Inc.*, 814 N.W.2d 703, 705 (Minn. 2012); *Qwinstar Corp. v. Anthony*, 882 F.3d 748, 752 (8th Cir. 2018). Contract terms should be given their plain and ordinary meaning so as to give effect to the intention of the parties as it appears from the entire contract. *Quade*, 814 N.W.2d at 705. A contract is ambiguous when the

language used is reasonably susceptible of more than one meaning. *Id.* at 706; *Qwinstar,* 882 F.3d at 754.

C.H. Robinson bases its standing argument on the assertion that it is a contracting party to the Bonus Agreement. In its opposition brief, it does not argue that Freightquote.com assigned the agreement to it, that it is a third-party beneficiary, or that it is a successor to the agreement (despite some language to that effect in the Complaint[14]). *See* Docket No. 32.

It argues the following plain language establishes that it is a party to the contract:

> This Incentive Bonus Agreement ("Agreement") is made by and between C.H. ROBINSON WORLDWIDE, INC., or one of its subsidiary or affiliated companies ("Company"), and Employee ("You" or "Your").

Compl. Exs. 20, 28, Docket No. 1-1 at 145, 166; Pl. Br. 3-4, Docket No. 32. C.H. Robinson asserts that its inclusion in this list connected by the word "or" makes it a party and, "[a]s a party to the Bonus Agreement, C.H. Robinson obviously has standing

---

[14] For example, the Complaint states that Dadkhah and Maassen each entered into a Non-Solicitation Agreement "with Freightquote.com . . . as a condition of, and ancillary to, his employment with Freightquote.com. C.H. Robinson *subsequently acquired* Freightquote.com and, as such, became Freightquote.com's successor and assign." Compl. ¶¶ 68-69, 94-95 (emphasis supplied); *see also id.* ¶¶ 8, 10 (describing Freightquote.com as its "corporate predecessor"). But the Complaint has the timing backwards: it is undisputed that C.H. Robinson's acquisition of Freightquote.com, Inc. occurred *over two years before – not after* - Dadkhah and Maassen became employed by Freightquote.com. *See, e.g., id.* ¶ 5. Similarly, some language in C.H. Robinson's opposition brief makes it sound as though the acquisition occurred *after* they began employment with Freightquote.com and that the acquisition triggered the signing of the Bonus Agreement. *See, e.g.,* Pl. Br. 1 ("after C.H. Robinson acquired Freightquote, Dadkhah and Maassen each entered into a contract with C.H. Robinson whereby they agreed to abide by certain restrictive covenants"), 3 ("During their Freightquote employment and after C.H. Robinson acquired Freightquote, Dadkhah and Maassen each signed a 2018 Incentive Bonus Agreement – Commissions . . . with C.H. Robinson . . . ."), Docket No. 32. These statements in the brief are factually true only because Dadkhah and Maassen's *entire employment* with Freightquote.com – not just the Bonus Agreement – happened after the acquisition, inasmuch as the acquisition *pre-dated* their employment by over two years.

to sue for its breach." Pl. Br. 4, Docket No. 32. In turn, it argues, this "Bonus Agreement acts as an independent restrictive covenant agreement under which C.H. Robinson (and not Freightquote) may sue Dadkhah and Maassen." *Id.* at 4.[15]

Dadkhah and Maassen say this language defines the contracting party as C.H. Robinson "or" one of its subsidiary "or" affiliated companies (thereafter to be identified in the agreement as "Company"), *not* C.H. Robinson "and" a subsidiary and/or affiliated company. Thus, "only one company" – Freightquote.com, their employer – is a party to the Bonus Agreement. *See* Defs. Reply Br. 1-2, 4, Docket No. 34.[16] The Court agrees.

The Court finds the agreement is not ambiguous[17] with respect to who is the contracting party; that "or one of" means "or," not "and"; and that the subsidiary Freightquote.com is the "one" party to the Bonus Agreements with its employees Dadkhah and Maassen, not C.H. Robinson. On its face, this is a form contract to be used by *one* of the described legal entities – either C.H. Robinson or one of its subsidiary or affiliated companies, not *all* of them collectively or interchangeably – with

---

[15] C.H. Robinson states that Freightquote.com is also a party to the agreement and, if joined in the lawsuit, "would be a party seeking to enforce the Bonus Agreement." Pl. Br. 9, Docket No. 32.

[16] Despite their clear argument regarding the meaning of "or," Defendants at times characterize the language as "vague," "imprecise," and "ambiguous" in their reply brief [Defs. Reply Br. 2, 4, Docket No. 34], for reasons the Court does not understand given their consistent position that they signed the three agreements with Freightquote.com, not C.H. Robinson.

[17] At oral argument C.H. Robinson stated the language in the first sentence of the agreement is "potentially ambiguous." But it did not argue ambiguity in its opposition brief. To the contrary, it argued that it is a party to the Bonus Agreement pursuant to the "plain language" of the agreement. *See* Pl. Br. 4 ("The Complaint makes clear that C.H. Robinson sued Dadkhah and Maassen for breaches of the Bonus Agreement."; "As a party to the Bonus Agreement, C.H. Robinson obviously has standing to sue for its breach. If a contract's *plain language* makes the plaintiff a party to the contract, the plaintiff has standing to assert a breach-of-contract claim." (emphasis supplied)), Docket No. 32.

the particular company's "Employee" (the other contracting party) for purposes of setting forth the eligibility and conditions under which its employee can earn a 2018 bonus or commission. There are references throughout the agreement to the Employee's "employment," and there is no dispute that Dadkhah and Maassen were employees of Freightquote.com, not C.H. Robinson. *See, e.g.* Intro. para. ("[i]n consideration of your continued employment"), ¶ 1 ("effective during and after your employment with the Company"), ¶ 4 ("You can terminate Your employment at any time"), final para. (referring to "agreements I previously have entered into with the Company" including the "Non Solicitation [] Agreement and Arbitration Agreement," which were signed by Freightquote.com, Inc.), Compl. Exs. 20, 28, Docket No. 1-1 at 144-46, 165-67.[18] Reading the plain language of the first sentence of the agreement in the context of the agreement as a whole, the Court finds C.H. Robinson is not a party to this agreement and thus, contrary to C.H. Robinson's assertion, the agreement does not "act[] as an

---

[18] At oral argument C.H. Robinson stated that, among the list of conditions that the Employee must satisfy in order to earn a bonus under the Bonus Agreement, is the requirement to comply with the "Company Code of Conduct," which counsel asserted is a C.H. Robinson document and thus "Company" must encompass C.H Robinson as a party to the agreement. *See* Compl. Exs. 20, 28 ¶ 1 (Bonus Agreement), Docket No. 1-1. But, first, C.H. Robinson did not make any argument regarding a Code of Conduct in its opposition brief. Second, C.H. Robinson has not directed the Court's attention to any mention of a Code of Conduct in the Complaint or its exhibits. Third, the only references to any "Code" that the Court sees in the Complaint is a Code of Ethics, not a Code of Conduct. Fourth, even if one of the contractual conditions for earning a bonus is that the Employee follow a rule set by the parent company of his employer, that does not transform the parent company into a party to the contract here, nor does it transform the individual into an employee of the parent company (despite the Complaint's repeated use of the term "employee" to refer to Dadkhah and Maassen whom C.H. Robinson admits were not its employees).

independent restrictive covenant agreement under which C.H. Robinson (and not Freightquote) may sue Dadkhah and Maassen." *See* Pl. Br. 4, Docket No. 32. [19]

The Court finds it appropriate, however, to permit a reasonable amount of time for Freightquote.com to join the lawsuit to pursue the claims against Dadkhah and Maassen. Although Defendants assert this would be "futile" because Freightquote.com is required to arbitrate its dispute, Freightquote.com should have the opportunity to assert (if it chooses to do so) any defenses challenging the validity or scope of the arbitration provisions found in the Arbitration Agreement and/or the Bonus Agreement. More fundamentally, however, joinder of Freightquote.com would deprive the Court of subject matter jurisdiction over this case because complete diversity would no longer

---

[19] At oral argument and in its Sur-Reply, C.H. Robinson argued for the first time that it has standing to sue Dadkhah and Maassen directly under the Non-Solicitation Agreements. *See* Pl. Sur-Reply Br. 1-2, Docket No. 41. However, generally the Court does not consider arguments made for the first time at oral argument or in a reply (or sur-reply) brief, especially where a party is represented. *See Abdulkadir A. v. Sessions*, No. 18-cv-2353, 2018 WL 7048363, at *13 n. 4 (D. Minn. Nov. 13, 2018) (citing *Barham v. Reliance Standard Life Ins. Co.*, 441 F.3d 581, 584 (8th Cir. 2006)), *report and recommendation adopted*, 2019 WL 201761 (Jan. 15, 2019); *Kruger v. Nebraska,* 820 F.3d 295, 302 n.5 (8th Cir. 2016). Here, C.H. Robinson is represented by counsel and is a sophisticated party with vast experience in cases of this nature, as it noted in its Complaint. *See* Compl. ¶ 2. The Court has examined Defendants' reply brief and finds that they did not raise any "new ground" with respect to C.H. Robinson's lack of standing. If they had, the Court would disregard it pursuant to Local Rule 7.1(c)(3)(B) ("A reply memorandum must not raise new grounds for relief or present matters that do not relate to the opposing party's response."). C.H. Robinson asserted that Defendants' "new claim" was their statement that "C.H. Robinson also concedes that Freightquote, not C.H. Robinson, entered into the Non-Compete Agreements (Compl., Exs. 3, 5) that form the basis of this lawsuit against Dadkhah and Maassen." (citing Defs. Reply Br. 3, Docket No. 34), Pl. Sur-Reply Br. 1, Docket No. 41. That language is mere commentary on C.H. Robinson's opposition brief which asserted standing based only on being a party to the Bonus Agreement, not the Non-Solicitation Agreement or the Arbitration Agreement. This is permissible reply material under the local rule. In contrast, at oral argument and in its Sur-Reply C.H. Robinson offered a new theory of standing premised on different language in a different agreement. This argument is waived for failure to raise it in the opposition brief.

exist as Freightquote.com and Maassen are both citizens of Missouri. Accordingly, the Court recommends that C.H. Robinson be allowed reasonable time to join Freightquote.com, Inc., and if C.H. Robinson does not do so, that Dadkhah and Maassen be dismissed from the lawsuit. In light of the Court's recommended disposition, it is premature to consider and resolve the parties' arguments regarding arbitration.

## II.    Counts IV, V, and VI

All seven Defendants move to dismiss the following three claims for failure to state a claim under Rule 12(b)(6): Count IV alleging breach of the duty of confidentiality [Compl. ¶¶ 168-77],[20] Count V for inducing, aiding, and abetting the breaches [*id.* ¶¶ 178-82), and Count VI alleging conspiracy [*id.* ¶¶ 183-88).

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to articulate a "short and plain statement of the claim showing that the pleader is entitled to relief." To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead sufficient facts, accepted as true, to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007). A complaint must provide more than "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). In determining whether a plaintiff has stated a plausible claim, the courts "consider matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing

---

[20] At oral argument C.H. Robinson stated it was not pursuing a trade secrets claim, as referenced in paragraph 173 of the Complaint, only misappropriation or misuse of confidential information.

in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned; without converting the motion into one for summary judgment." *Dittmer Props., L.P. v. F.D.I.C.*, 708 F.3d 1011, 1021 (8th Cir. 2013) (quoting *Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 931 n.3 (8th Cir. 2012)) (internal quotation marks omitted).

C.H. Robinson points to its 57-page Complaint as evidence of the detail of its factual allegations. But volume does not equal precision, nor establish the plausibility required to satisfy federal pleading standards. While the Court agrees with C.H. Robinson that hyper-particularity is not required, the sprawl of its Complaint in this case – which covers six individual Defendants in multiple offices in geographically distant states, California and Missouri, in addition to C.H. Robinson and Defendant Traffic Tech in Minnesota – detracts from the clarity of its claims.

Dozens of pages of the Complaint consist of block quotations of documents, followed by conclusory allegations stating, in essence, that all of the individual Defendants violated all of the provisions in every way. The Complaint then attaches 34 exhibits totaling over 130 pages. Add to this the length of the list of C.H. Robinson's confidential information and the breadth of the "customer" base encompassed by the Complaint. The Court recognizes that paragraph 172 in Count IV of the Complaint contains a non-exhaustive list of categories of confidential information, as does paragraph 21, but these lists seem to encompass any and all confidential information possessed worldwide by C.H. Robinson. The statements in paragraphs 132-39 entitled "Misappropriation and Misuse of C.H. Robinson Confidential Information" are conclusory with respect to the use of confidential information.

Similarly, the Complaint describes the universe of C.H. Robinson's "customers" very broadly. For example, it states C.H. Robinson has a "large network of thousands of companies that ship goods (a/k/a 'carriers') with whom it has developed a customer-relationship to move goods for its other customers who have shipping needs." Compl. ¶ 19. In addition, because the Complaint often conflates C.H. Robinson with its subsidiary Freightquote.com, with respect to Freightquote.com employees Dadkhah and Maassen, it is not clear whether the confidential information and customer base of Freightquote.com overlaps with that of C.H. Robinson for purposes of the restrictions C.H. Robinson seeks to enforce against all of the Defendants.

This bulk recitation of undifferentiated facts does not provide a "short and plain statement" of the particular claims against each Defendant with respect to the confidential information he had access to and allegedly misused, or the conspiratorial actions he allegedly performed and with whom, or who or what he induced, aided, and/or abetted for an unlawful purpose or in an unlawful manner. Accordingly, the Court recommends that Defendants' motion to dismiss Counts IV, V, and VI be granted but that C.H. Robinson be allowed to file an amended complaint to re-plead these causes of action with clarity and brevity.

## RECOMMENDATION

For the reasons set forth above, the Court RECOMMENDS that Defendants' Partial Motion to Dismiss [Docket No. 24] be granted in part and denied in part as follows:

1.    That Dadkhah and Maassen's motion be granted but that C.H. Robinson be allowed 30 days in which to join Freightquote.com, Inc.; and if C.H. Robinson does not do so, that Dadkhah and Maassen be dismissed from the lawsuit;

2.    That all Defendants' motion to dismiss Counts IV, V, and VI be granted without prejudice and that C.H. Robinson be allowed 30 days to file an amended complaint to re-plead these counts.

Dated: April 7, 2020

s/David T. Schultz_____
DAVID T. SCHULTZ
United States Magistrate Judge

**NOTICE**

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).