UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

C.H. Robinson Worldwide, Inc.,

    Plaintiff,

v.

Traffic Tech, Inc., James
Antobenedetto, Spencer Buckley,
Wade Dossey, Brian Peacock, and
Dario Aguiniga,

    Defendants.

**MEMORANDUM OPINION
AND ORDER**
Civil No. 19-902 (MJD/DTS)

---

    Joel O'Malley, Katie M. Connolly, Nicole F. Dailo and Andrew L. Peterson, Nilan Johnson Lewis, P.A., Counsel for Plaintiff.

    Pamela Abbate-Dattilo and Lukas S. Boehning, Fredrikson & Byron, P.A., Counsel for Defendants.

---

This matter is before the Court on Defendants' Motion for Attorney's Fees and Costs (Doc. No. 174) and Motion to File Reply Brief (Doc. No. 193).

**I.  Background**

Plaintiff C.H. Robinson Worldwide, Inc. ("CHR") brought this action against Defendants seeking to enforce certain restrictive covenants contained in the Confidentiality and Protection of Business Agreements ("CHB Agreements")

1

signed by the individual defendants as a condition of employment. Originally, CHR had asserted six causes of action: Count I, Breach of Contract; Count II, Tortious Interference with Contractual Relationships; Count III, Tortious Interference with Prospective Economic Advantage; Count IV, Breach of Duty of Confidentiality; Count V, Inducing, Aiding and Abetting Breaches; and Count IV, Conspiracy. (Doc. No. 1.) In an Order dated May 14, 2020, the Court granted Defendants' motion to dismiss in part and allowed CHR to file an amended complaint. Thereafter, CHR filed an Amended Complaint that asserted the same claims but dropped claims against two individual defendant. (Doc. No. 81.)

On September 17, 2020, Defendants moved to dismiss Counts IV through VI, and the motion was granted. (Doc. No. 110.) CHR then filed a Second Amended Complaint ("SAC") that asserted three causes of action: Count I, Breach of Contract; Count II, Tortious Interference with Contractual Relationships; Count III, Tortious Interference with Prospective Economic Advantage. (Doc. No. 115.)

In March 2021, Defendants moved for summary judgment as to the remaining claims, and by Order dated September 22, 2021, this Court granted Defendants' motion in its entirety.

2

With respect to the breach of contract claim, the Court found that the restrictive covenants were governed by California law, and that under California law, the restrictive covenants were not enforceable.

With respect to the tortious interference claims, the Court found that to the extent these claims addressed contractual relationships with customers, Defendants were entitled to summary judgment as CHR failed to demonstrate it had any exclusive contracts with any of its customers and failed to identify any customer or carrier contracts that were interfered with by Defendants.

Finally, the Court found that Defendants were entitled to summary judgment on the claim that Defendants tortiously interfered with the restrictive covenants set forth in the CPB Agreements as the restrictive covenants were not enforceable.

Defendants now seek attorney's fees and costs under California law. For the reasons that follow, the Court will grant Defendants' motion.

**II.     Discussion**

    **A.     Which State Law Governs Defendants' Motion**

The CPB Agreements provide that in the event CHR seeks injunctive relief to enforce the restrictive covenants contained therein, "[CHR] shall further be

entitled to recover all attorneys' fees reasonably incurred in establishing such violation of this Agreement . . ."  (Doc. No. 115 Exs. 1-3, 25, § VII.)

Defendants argue that California law applies to their motion for attorney's fees and costs, and that California has enacted legislation to address unilateral attorney's fee provisions, such as the provision in the CPB Agreements. California's Reciprocal Attorney's Fee Statute provides:

> In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs.

Cal. Civ. Code § 1717(a).

Section 1717 applies even when a party defeats a contract claim by showing the contract was unenforceable, "if the opposing party would have been entitled to attorney fees had it prevailed."  Brown Bark III, L.P. v. Haver, 219 Cal App. 4th 8709, 819 (Cal. Ct. App. 2013).

Defendants argue that Section 1717 applies here because it is clear from the contract language in the CPB Agreement, that CHR would be entitled to fees had it prevailed on its claims.  As the individual defendants were the prevailing

4

parties on the breach of contract claims, they are entitled to reasonable attorney's fees and costs under California law.

It is CHR's position that Minnesota law governs the motion for attorney's fees and costs. CHR argues that whether a party is entitled to attorney's fees is a procedural issue and that a Court sitting in diversity must apply the law of the forum to procedural questions. Therefore, Minnesota law must be applied to determine whether Defendants are entitled to attorney's fees and costs. CHR further asserts that even if the Court finds that awarding attorney's fees is a substantive issue, a choice of law analysis will demonstrate that Minnesota law should govern this issue. In support of its argument, CHR cites to the decision in Bannister v. Bemis Co., Inc., 07-1662 (RHK/AJB), 2008 WL 2002087 (D. Minn. May 6, 2008). That case is distinguishable, however, because the contract at issue in that case did not include an attorney's fee provision. Id. at 1.

The Court finds that California law applies to the issue of attorney's fees and costs. As to CHR's arguments, the Court notes that it has already conducted a choice of law analysis with regard to the CPB Agreements and found that California law governs those contracts. As one of the provisions of the CPB Agreements concerns the recovery of attorney's fees, the issue is substantive and

controlled by California law.  See BP Group, Inc. v. Capital Wings Airlines, Inc., 09-dv-2040 (JRT/JSM), 2011 WL 4396938, at *1 (D. Minn. Sep. 21, 2011) (because the parties agreed the contract was governed by Florida law and the contract contained an attorney's fees provision, the court found the question of whether a party could recover attorney's fees under the contract was a substantive matter controlled by Florida law).

Finally, CHR argues that even if California law applies, California courts have repeatedly held that when a contract provision is adjudicated to be illegal, no party can enforce its terms, even an attorney's fee provision.  As to this argument, the Court notes that it did not find the contracts to be illegal.  Rather, the Court found those covenants to be void and unenforceable, which is not a barrier to the recovery of attorney's fees under  Section 1717.  See Brown Bark III, 219 Cal App. 4th at 819.

### B.    Whether Fees Should Be Apportioned

Defendants further assert they are entitled to fees incurred in defending all claims asserted by CHR in this action, because Section 1717 is to be construed liberally and the right to contractual attorney's fees extends to all causes of action that are inextricably intertwined with the breach of contract claim.  See Turner v.

Schultz, 175 Cal. App. 4th 974, 979 (Cal. Ct. App. 2009); Rivera v. Wachovia Bank, 09-cv-433 JM (AJB), 2009 WL 3423743, at * 2 (S.D. Cal. Oct. 23, 2009) ("Moreover, the right to attorney's fees extends to all causes of action that are 'inextricably intertwined' with the contract action.")  Thus, where causes of action are "based directly on the contract, require predicate acts based on breach of contract, or relate to the formation of the contract," they are inextricably intertwined with the contract.  Id.

Defendants argue, and this Court agrees, that all of the claims asserted by CHR's are inextricably intertwined with the CPB Agreements and the non-restrictive covenants contained therein.  Accordingly, the Court will not apportion the fee request based on the individual counts.

For every count originally included in the Complaint, except the conspiracy claim, CHR expressly refers to the employment agreements at issue. (See e.g. Complaint, Count I, Breach of Contract at ¶ 144 (breach of the CPB Agreements); Count II, Tortious Interference with Contractual Relationship at ¶¶ 151-53 (referencing employee contracts); Count III, Tortious Interference with Prospective Economic Advantage at ¶ 162 (alleging Defendants interfered with current and former CHR employees' employment contracts); Count IV, Breach of

7

Duty of Confidentiality at ¶ 169 (referencing contractual employment agreements concerning confidentiality); Count V, Inducing, Aiding and Abetting Breaches at ¶¶ 179-80 (inducing, aiding and abetting breaches of employment contracts)).)[1] Although CHR did not reference the restrictive covenants in the complaint in its allegations supporting the conspiracy claim in Count VI, CHR described its conspiracy claim in later pleadings as follows: "it is now abundantly clear the role each Individual Defendant played, and the confidential information used to 'usurp' C.H. Robinson's clients, in violation of their agreements, for their and Traffic Tech's benefit." (Doc. No. 98 (CHR Opposition to Motion to Dismiss at 20).)

The SAC similarly bases all claims on the restrictive covenants in the CPB Agreements. (See, e.g., SAC, Count II, Tortious Interference with Contractual Relationships at ¶¶ 142-44 (alleging Defendants tortiously interfered with CHR contracts with its employees); Count III, Tortious Interference with Prospective Economic Advantage at ¶ 153 (alleging Defendants tortiously induced current and former CHR employees to breach their contractual duties owed CHR in

---

[1] The allegations in the Amended Complaint are substantially the same as in the Complaint, minus allegations against the defendants that were dismissed.

order for Defendants to usurp CHR's business relationships and reasonable expectation of economic advantage with its customers).)

Finally, Defendants argue that the Court should not apportion fees between Traffic Tech and the individual defendants because all claims involved issues common to all causes of action – chiefly the enforceability of the CPB Agreements.[2] See Reynolds Metals Co. v. Alperson, 599 P.2d 83, 86 (Cal. 1979) (finding that attorney's fees need not be apportioned when incurred for representation on issue common to both a cause of action in which are proper and one in which they are not); Hill v. Affirmed Hous. Group, 226 Cal. App. 4th 1192, 1197 (Cal. Ct. App. 2014) (finding allocation of fees in representing multiple parties is not required when claims are inextricably intertwined such that it is not possible to differentiate between compensable and non-compensable time).

Because it is clear that the tortious interference claims asserted against all defendants are inextricably intertwined, the Court finds that no allocation of fees between Traffic Tech and the individual defendants is required.

### C. Whether the Fees Requested Are Reasonable.

---

[2] Defendants are not seeking to recover for time billed for work related to the defense of Dadkhah and Maassen, who were dismissed from this case by Order dated September 11, 2020 (Abbate Dattilo Decl. at ¶ 8). In addition, Defendants are not seeking to recover for time billed solely to Traffic Tech's justification defense. (Id. at ¶ 9.)

"The amount of the fee [] must be determined on the facts of each case." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Id. at 433. The party seeking fees bears the burden of producing evidence to support the rates charges. Id. "[W]hen fixing hourly rates, courts may draw on their own experience and knowledge of prevailing market rates." Warnock v. Archer, 397 F.3d 1024, 1027 (8th Cir. 2005) (citations omitted).

As to the amount of fees requested, Defendants have submitted the declaration of Pamela Abbate Dattilo setting forth defense counsels' experience, hourly rates and the hours expended litigating the claims brought by CHR. (See Abbate Dattilo Decl., Ex. A.) Abbate Dattilo attests she is a Shareholder at Fredrikson & Byron P.A. and has twelve years of experience litigating non-compete disputes. (Id. ¶¶ 1, 5.) She attests she spent 214 hours on the case and that her hourly rate is $425. (Id. ¶5.) She further attests that Lukas Boehning spent 365.8 hours on the case, and that his hourly rate is $305 (2020) and $335 (2021). (Id. ¶ 4.) Other timekeepers on this case billed lesser hours, ranging from 92 hours to 1.3 hours, and charged hourly rates ranging from $335 to $130. (Id.)

Abbate Dattilo further attests that based on her experience and understanding of hourly rates charged in the Twin Cities, the rates charged by Defendant's legal team are consistent with rates charged by other firms for similar services provided by lawyers with similar skill and experience. (Id. ¶ 17.) CHR does not challenge the rates charged by defense counsel.

Based on its experience and knowledge of the prevailing rates in this market, the Court finds that the hourly rates charged, from $425 to $130 are reasonable. See e.g., Price v. Midland Funding LLC, 18-cv-509 (SRN/SER), 2018 WL 5259291, at *4 (D. Minn. Oct. 22, 2018) (noting $425 was a reasonable rate to charge in consumer law cases); Harris v. Chipotle Mexican Grill, Inc., No. 13-cv-1719 (SRN/SER), 2018 WL 617972, at *8 (D. Minn. Jan. 29, 2018) (approving hourly rates ranging from $575 per hour to 300 per hour).

Finally, Defendants assert the number of hours billed is reasonable, given the extensive work required in this case, including discovery and multiple motions to dismiss that resulted in the dismissal of two defendants and multiple claims, and its successful motion for summary judgment involving the remaining claims and defendants. CHR argues the Court should eliminate fees incurred in defending against the non-contract claims, fees incurred specific to Traffic Tech's

11

defense, a 50% reduction for fees billed towards the first motion to dismiss, which was voluntarily withdrawn and contained arguments related to those individual defendants that were dismissed, fees incurred to oppose CHR's motion for voluntary dismissal, and fees incurred in bringing a second motion to dismiss that did not seek dismissal of any California-governed breach of contract claims.

As set forth above, apportionment of fees between claims and defendants is not required, as all claims are inextricably intertwined with the contract claims. Defendants have already agreed not to seek fees specific to Traffic Tech's justification defense or fees specific to the dismissed defendants.  Any further reduction is not warranted.

Based on its review of Defendants' billing records, the Court finds that the time billed is reasonable based on the amount of discovery conducted in this case, including multiple depositions and the production and review of thousands of documents.  Further, this case involved multiple dispositive motions and responses to motions brought by CHR.  Accordingly, the Court will grant Defendants' request for attorney's fees in the total amount of $225,762 (which includes $6,000 incurred in preparing the motion for attorney's fees and costs).

Defendants also request costs in the total amount of $21,654.  (Abbate Dattilo Decl., Ex. B.)  CHR has not opposed the requested costs, and the Court finds the costs incurred are reasonable.

**IT IS HEREBY ORDERED** that:

1. Defendants' Motion for Attorney's Fees and Costs (Doc. No. 174) is **GRANTED.**   Attorney's fees and costs in the total amount of $247,416 are hereby awarded to Defendants.

2. Defendants' Motion to File Reply Brief (Doc. No. 193) is **GRANTED.**

Date:   December 7, 2021

s/Michael J. Davis  
Michael J. Davis  
United States District Court