UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| C.H. Robinson Worldwide, Inc., | No. 19-CV-00902 (KMM/DTS) |
| Plaintiff, | |
| v. | **ORDER** |
| Traffic Tech, Inc., James Antobenedetto, Spencer Buckley, Wade Dossey, Brian Peacock, and Dario Aguíñiga, | |
| Defendants. | |

Before the Court is Defendant Brian Peacock's Motion for Fees. ECF 288. For the reasons that follow this motion is **GRANTED**, subject to additional instructions for Mr. Peacock.

**I.    Background**

This case involves contract and tort disputes between Plaintiff C.H. Robinson Worldwide, Inc. ("CHR") against Defendant Traffic Tech, Inc. ("Traffic Tech") and five individual defendants: James Antobenedetto, Spencer Buckley, Wade Dossey, Brian Peacock, and Dario Aguiniga. This case has been the subject of much writing in its lengthy procedural history, so the Court will provide only a brief summary here.

In September 2021, the Honorable Michael J. Davis granted summary judgment in favor of Traffic Tech and the individual defendants in this case. *See* ECF 170 (Summ. J. Order). Among other things, Judge Davis concluded that California law governed the at-

1

issue employment agreements for each individual defendant. *See id*. at 25. Judge Davis concluded that all of the agreements were unenforceable under California law, which prohibits most non-compete and non-solicitation agreements. *Id*. at 27. Following that order, Judge Davis further granted attorney fees to each Defendant, likewise pursuant California law. ECF 207.

The Eighth Circuit partially reversed, finding that Minnesota law, rather than California law, governed the contracts of Mr. Antobenedetto, Mr. Buckley, Mr. Dossey, and Mr. Aguiniga. *C.H. Robinson Worldwide, Inc. v. Traffic Tech, Inc.*, 60 F.4th 1144, 1148 (8th Cir.).[1] As for Mr. Peacock, whose employment agreement contained unique choice-of-law language, the Eighth Circuit instructed this Court to determine "in the first instance whether C.H. Robinson's claims or disputes against Peacock arose in California under the language in Peacock's employment contract" and then to decide whether California or Minnesota law governed this dispute. *Id*. at 1150. This case was reassigned, and on remand, this Court again granted summary judgment to all Defendants. The Court reached this decision applying Minnesota law to the employment agreements of Mr. Antobenedetto, Mr. Buckley, Mr. Dossey, and Mr. Aguiniga, while determining that California law governed Mr. Peacock's agreement, in line with the Eighth Circuit's instructions. *See* ECF 277 (Summ. J. Order) at 12–33. While the Defendants asked this Court to "reinstate" Judge Davis's prior fee award, the Court declined to do so, concluding that Judge Davis's "award was nullified by the Eighth Circuit, and this Court arrive[d] at its conclusion on summary

---

[1] This opinion is found at ECF 211.

judgment based on a different legal analysis, guided by the Eighth Circuit's remand instructions." ECF 277 at 15. CHR appealed most aspects of this Court's ruling.[2] See ECF 279 (Not. of App.). And Mr. Peacock has filed the pending motion for attorney fees. ECF 288.

Mr. Peacock seeks attorney fees on three independent grounds. First, Mr. Peacock argues that he is entitled to his fees under Cal. Civ. Code § 1717(a), a statute that transforms all one-sided contractual attorney fee provisions into reciprocal agreements. ECF 292 (Mem. in Supp. of Fees Mot.) at 7. Second, Mr. Peacock invokes Cal. Lab. Code § 925, which provides for attorney fees to an employee who disputes his or her employer's attempt to subject the terms of their employment to the law of any other state. Id. at 10. Third, Mr. Peacock contends that this Court may grant fees under its inherent authority. Id. at 11.

## II. Discussion

The Court is, in large part, guided by its conclusion that Judge Davis has, indeed, already decided this issue. While the Eighth Circuit's partial reversal of Judge Davis's summary judgment order rendered moot his decision to award fees under California law to the four individual Defendants whose employment agreements were governed by Minnesota law, nothing about the Eighth Circuit's opinion ultimately challenged Judge Davis's legal analysis regarding the appropriateness of fees under California law, to the extent that California law applied. Mr. Peacock now seeks fees on substantively the same

---

[2] While CHR has not appealed the Court's determination that California law applies to Mr. Peacock's employment agreement, it has challenged the Court's decision not to grant voluntary dismissal of the claims against Mr. Peacock on the eve of summary judgment.

3

grounds as he did originally to Judge Davis. *See* ECF 176 (Mem. in Supp. of First Mot. for Fees). And CHR opposed Mr. Peacock's fees on substantively the same bases that it now opposes Mr. Peacock's request. *See generally* ECF 186 (Opp. to First Mot. for Fees). As such, the Court concludes that Mr. Peacock is entitled to his fees under Cal. Civ. Code § 1717(a). The Court's reasons for doing so are the same as those already stated by Judge Davis.

> Cal. Civ. Code § 1717(a) reads as follows:
>
>> In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs.

See *Reynolds Metals Co. v. Alperson*, 599 P.2d 83, 85 (Cal. 1979) (explaining that the statute was "enacted to establish mutuality of remedy where [a] contractual provision makes recovery of attorney's fees available for only one party"). "To invoke section 1717 and its reciprocity principles a party must show (1) he or she was sued on a contract containing an attorney fee provision; (2) he or she prevailed on the contract claims; and (3) the opponent would have been entitled to recover attorney fees had the opponent prevailed." *Brown Bark III, L.P. v. Haver*, 219 Cal. App. 4th 809, 820 (2013).

None of these prongs are in any serious dispute here. As Judge Davis previously observed, Mr. Peacock's employment agreement contains a provision that satisfies the first prong. This provision entitles CHR, exclusively, to fees "reasonably incurred in establishing [a] violation" of the agreement, without any reciprocal provision for

4

Mr. Peacock. ECF 207 at 4 (citing ECF 115, Exs. 1-3, 25, § VII). Furthermore, Mr. Peacock was (2) sued in this matter by CHR, (3) prevailed in that lawsuit, and (4) CHR would have been presumptively entitled to its fees under the relevant contract provision if it had, instead, won its case against Mr. Peacock. Thus, § 1717 applies to Mr. Peacock's agreement, absent some reason to conclude otherwise.

CHR raises several arguments against the application of § 1717, but none are persuasive, and nearly all were already resolved by Judge Davis. The Court will nevertheless briefly address some of CHR's arguments and its reasons for rejecting them. First, CHR maintains that Mr. Peacock cannot rely upon a fees provision in his employment agreement because that agreement has been found to be void by this Court. But the Court did not make any finding that the entire employment agreement was void, only those non-solicitation provisions that offend California law. *See* ECF 277 at 13–14 (explaining that "[u]nder California law 'every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind *is to that extent* void'") (emphasis added) (quoting Cal. Bus. & Prof. Code § 16600(a)). And it is well established by the California courts that even if the entire employment agreement was void and unenforceable, that would not diminish Mr. Peacock's right under § 1717 to seek reciprocal fees. See *Brown Bark III*, 219 Cal. App. 4th at 819 ("[S]ection 1717 allows a party who defeats a contract claim by showing the contract did not apply or was unenforceable to nonetheless recover attorney fees under that contract if the opposing party would have been entitled to attorney fees had it prevailed.") (citing *Santisas v. Goodin*, 17 Cal. 4th 599, 611 (1998).

5

Second, CHR maintains that the issue of awarding fees is procedural, rather than substantive, so even if Mr. Peacock's employment agreement is governed by California law, any dispute over fees should be resolved using Minnesota law. *See* ECF 299 at 7–12. This Court agrees with Judge Davis's conclusion that the recovery of fees here is a substantive issue: it involves the interpretation of a fees provision in an employment agreement, the operation of which is generally governed by California law. *See BP Grp., Inc. v. Capital Wings Airlines, Inc.*, 09-cv-2040 (JRT/JSM), 2011 WL 4396938, at *1 (D. Minn. Sep. 21, 2011) (in contract governed by Florida law that contained an attorney's fees provision, any question of whether a party could recover attorney's fees under the contract was a substantive matter controlled by Florida law); *see also Honeywell, Inc. v. Ruby Tuesday, Inc.*, 43 F. Supp. 2d 1074, 1078 (D. Minn. 1999) ("[I]ssues related to the interpretation and validity of contractual provisions are inarguably substantive in nature."); *PVI, Inc. v. Ratiopharm GmbH*, 253 F.3d 320, 329 (8th Cir. 2001) ("When a contract provides for attorneys' fees, Missouri law regards them as substantive rights created by the contract, and thus awards them in accordance with the substantive law applicable to the contract generally.").

CHR also argues that even if the issue of fees is substantive, then Minnesota law should still govern the fees issue under a conflict-of-laws analysis. ECF 299 at 12 (citing *Bannister v. Bemis Co.*, No. 07-cv-1662 (RHK/AJB), 2008 WL 2002087 (D. Minn. May 6, 2008)). It is true that the *Bannister* court applied the law of Minnesota to the question of attorney fees, despite the parties agreeing by contract to the application of Arkansas law to any disputes. 2008 WL 2002087, at *1. Its apparent reason for doing so was that even if

6

the "right to attorney's fees [under the contract] is substantive for *Erie* purposes . . . it does not follow that it is substantive for purposes of the choice-of-law inquiry." *Id.* But *Bannister* is not binding here, and this Court declines CHR's invitation to engage in this sort of infinitely digressive choice-of-law analysis. California law will apply to fees provision in Mr. Peacock's employment agreement because the Court has determined that, in CHR's case against Mr. Peacock, California law applies to the agreement as a whole. *See Instructional Sys., Inc. v. Computer Curriculum Corp.*, 35 F.3d 813, 825 (3d Cir. 1994) ("While a contract which covers multiple states may raise a difficult choice-of-law question, once that question is resolved there is nothing untoward about applying one state's law to the entire contract.").

***Reasonableness of Fees***: Having determined that Mr. Peacock is entitled to fees under the fee provision in his employment agreement, the Court turns to the reasonableness of those fees. This issue is guided by federal law, not the law of California. See *BP Grp.*, 2011 WL 4396938, at *1 (concluding that "[w]hile the issue of whether [plaintiff] is entitled to recover attorney fees and costs pursuant to the [contract] is a substantive matter controlled by Florida law, 'the method of quantifying a reasonable fee is a procedural issue governed by federal law in a diversity suit'") (quoting *Oldenburg Grp. Inc. v. Frontier–Kemper Constructors, Inc.*, 597 F. Supp. 2d 842, 847 (E.D. Wis. 2009)).

"The amount of an attorney's fee award must be determined on the facts of each case and is within the district court's discretion." *In re RFC*, 399 F. Supp. 3d 827, 841 (D. Minn. 2019) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 429, 437 (1983)). "The starting point for determining a reasonable attorneys' fee is the lodestar calculation, which is the

7

number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Id.* (internal quotation marks omitted). A dispute over fees generally "should not result in a second major litigation," and district courts "need not, and indeed should not, become green-eyeshade accountants." *Fox v. Vice*, 563 U.S. 826, 838 (2011). When awarding fees, a court should aim to "do rough justice, not to achieve auditing perfection," and may resort to "estimates in calculating and allocating an attorney's time." *Id.*

The parties agree that the lodestar calculation is the proper framework in this case, and CHR further agrees that the hourly rates sought by Mr. Peacock's attorneys are reasonable. See ECF 299 at 22. But there is a dispute around the number of hours that Mr. Peacock seeks fees for, given that he is only one of six defendants that were sued in this case. *Id.* at 22–23. Mr. Peacock divides his request for fees into two parts: Part 1 covers March 2019 (when the case began) through November 2021 (when Mr. Peacock filed his first fee petition); Part 2 covers November 2021 through the now-pending fee request. ECF 292 at 2. With respect to Part 1, Judge Davis originally awarded $247,416 in fees and costs for all of the individual defendants in this matter. ECF 207 at 13. Following CHR's appeal and the second round of summary judgment, Mr. Peacock now asks the Court for a total of $329,748 in fees and costs for himself alone. ECF 292 at 19. According to Mr. Peacock, this figure is already apportioned to account for the fees expended on the other defendants that are not seeking fees, while also accounting for the "overlapping nature" of the joint defense in this case. *Id*. at 21–25 (proposing a 20% discount off all pre-appeal (Part 1) fees and 30% discount off of all post-appeal (Part 2) fees to adequately apportion out Mr. Peacock's fees from those accrued defending others); ECF 293 ¶¶ 14, 23, 25.

CHR does not agree and asks the Court to further apportion and reduce the total fees awarded to Mr. Peacock. ECF 299. According to CHR, Mr. Peacock's proposed apportionment seeks recovery of significant attorney fees incurred only on behalf of his co-defendants for both Parts 1 and 2 of the litigation. *Id.* at 22–30. CHR argues that it would be inappropriate for Mr. Peacock to recover any fees that are not expressly attributable to work on his behalf and suggests that an award of attorney fees should not exceed $96,935.90. *Id.* at 30. These fees represent 20% of those requested by all Defendants in Part 1 of the litigation ($35,271.35), a significant reduction of the total fees requested during Part 2 ($60,970), and $694.55 in transcript costs. *Id.*

The Court has carefully reviewed the evidence submitted in support of and in opposition to the fee petitions in this matter. ECF 177, 178, 179, 187, 290, 293, 300, 301. The undersigned has also carefully reviewed the record before the case was reassigned and is very familiar with the progress of the litigation since the remand from the Eighth Circuit. Based on that careful review, the Court finds that $250,000 represents a reasonable award of attorney fees and costs in this matter. First, the Court finds that CHR's proposed 80% reduction of the fees and costs incurred during Part 1 is excessive. Such a significant reduction fails to account for the overlapping nature of the issues presented by the parties' dispute and the litigation strategy CHR pursued during the initial phase of the litigation. The claims and defenses relevant to all the individual defendants were intertwined, and even if CHR had pursued its case against Mr. Peacock alone, his defense would have required counsel to have performed much of the work undertaken during that phase of the litigation. For example, Mr. Peacock would have argued, just as all the individual

9

Defendants did, that: California law governed; the contracts lacked consideration; the restrictive covenants were overbroad; and CHR suffered no damages. Undoubtedly, however, the defense group would not have incurred the full amount of attorney fees during Part 1 of the litigation if Mr. Peacock had been the only individual defendant.

Second, the Court finds that the issues litigated after the case was remanded were not so inextricably intertwined as the claims and defenses litigated during Part 1. Consequently, Mr. Peacock's proposed apportionment of fees and costs would result in an unreasonable award of attorney fees because it would compensate him for legal work that was focused on the issues that were germane to the defense of the other individual defendants and Traffic Tech. ECF 301 at 1–3 (identifying approximately $21,600 in billing entries that should not be attributed to Mr. Peacock's defense).

Ultimately, there are factors supporting and weighing against each side's proposed apportionment of the fees in this case. CHR proposes too great a reduction of the reasonable fees and costs Mr. Peacock incurred prior to the appeal, and Mr. Peacock seeks to recover considerably more in fees and costs following the appeal than is reasonable under the circumstances. An award of $250,000 in fees and costs adequately accounts for the reasonable fees and costs incurred during the different phases of this litigation.

**III.   Order**

For the foregoing reasons, **IT IS HEREBY ORDERED that:**

1. Defendant Brian Peacock's Motion for Fees (ECF 288) is **GRANTED** in part.

2. C.H. Robinson shall pay the sum of $250,000 in fees and costs to Defendant Brian Peacock.

Date: October 23, 2025    *s/ Katherine M. Menendez*
                                                    Katherine M. Menendez
                                                    United States District Judge